How are you today? I'm doing well, thank you, Your Honor. You may proceed. Good morning, Your Honors. My name is Karen Bucher, and I represent Darren Tyger. And this is the case where she embezzled money from her employer, the basketball player who had a terrible organization. In this case, Ms. Tyger pled guilty to bank fraud under Section 1344.1, which makes it a crime to defraud a financial institution. She's arguing on appeal that her guilty plea should be set aside because the Court should have known that the facts in her case could not support a conviction. How should the Court have known that, given the state of the law in the Ninth Circuit? I have three answers to that. First, the plain language of the statute, 1344.1, and the legislative history states that the conduct has to be targeted to the bank and cause harm to the bank. The second reason is the bank fraud statute has two sections in it, and so there's two ways that one can violate the bank fraud statute. And the Ninth Circuit says that the scope of these two subsections, they differ substantially. The first one criminalizes schemes that defraud the bank, and the second one is a broader scope, which criminalizes schemes to obtain money that's within the control of the bank. In other words, the first one targets the bank and you would cause it harm, and the second one seems for you to obtain funds from the bank that they have custody of by false pretenses and fraudulent means. There's a distinction. And then the third reason is because there is a circuit split as to whether or not you had to one has to intend to harm the bank to violate the first section, there are many jurisdictions that hold that the only way you can violate section 1 is if you do intend to harm the bank. But there are circuits that hold the other way as well, right? There's two, but there's more that don't. But those are the middle circuits. I think it's the first and eighth, Your Honor. Oh, first and eighth. Okay. Go ahead. I mean, I'm not at all sure that writing a bad check can't in fact hurt the bank. I mean, for a check, the bank is responsible. It's not supposed to pay money on a forged check. It's supposed to check the signature. And if I remember my money in banking class 30 years ago in law school, if you pay on a forged endorsement, the bank is liable. So why isn't forging a check and passing it on, why doesn't that potentially hurt the bank? The distinction in this case is that the check did have an authorized signature and there were sufficient funds to back it up. It's different when you submit a check that you've actually altered and there's insufficient funds. That's the major distinction in this case. In fact, that the check that she submitted had an authorized signature, and it was her intent to embezzle funds from her employer. I want to say it had an authorized signature. Yes. She was authorized to sign the check? That's my understanding of the facts of this case, that she was authorized to use a stamp on the checks and to sign his name. No, I thought it was just the opposite, that she was not authorized to endorse the checks, but the way that it was done was so easy because all she had to do was take the stamp, which she wasn't supposed to use, stamp the back of the check with a preprinted endorsement, and the bank would negotiate the check. Isn't that what the facts were? My understanding is that she could write out the legitimate checks, the paid legitimate foundation debts, and she can use. But she was the executive director. She wasn't the treasurer, was she? I think my reading of the record was that the problem was she was not an authorized person by Mr. Smith's charity to have anything to do with this money, but that she got a hold of a stamp, and then she started depositing checks and changing the payee to herself or her husband or her creditors, and that's how she defrauded the foundation. If I misunderstand the record, please help me on that. No, I could be wrong. Because this was a guilty plea. Right. So there was no trial. Sure. But my recollection is, and by my reading of the record, is that part of her duties was to write out legitimate checks, to pay legitimate expenses, and that she had the stamp. That's my best recollection. Okay. Well, we'll hear from the government counsel if he disagrees, I'm sure. And then that's the distinction in this case, that they were legitimate-looking checks. Well, let me ask a hypothetical question, and that is, if the policy of the law is to punish schemes to defraud without regard to whether the bank is a witting or an unwitting instrumentality of the crime, then why shouldn't the district court have taken a plea where she freely admitted that she helped herself to almost $300,000 in Smith Foundation money that she had no right to take, and that that was the essence of the scheme to defraud. She did it in a way to try and hide from the Foundation that she was embezzling or misappropriating monies, and that she did so through the instrumentality of the bank account. She did admit that. It's the statute. They charged the wrong statute. That's what it boils down to. So you're saying this is just a classic mail wire fraud scheme, but they didn't charge it as 1341. They charged it as bank fraud under 1344. No, Your Honor, that's not what I mean. They charged it on 1344-1, which is a scheme to defraud a bank. It should have been charged on a different statute. Couldn't they have charged it under 1341, a mailing in furtherance of a scheme to defraud? I mean on the regular mail fraud statute? 1341. I'm sorry. If I confused it with my citation to Title 18, that's what I meant, yes. Yes, just plain old mail fraud. Charge it every day. A person engages in a scheme to defraud and commits a mailing in furtherance of the scheme. That's a Federal crime, is it not? I think you're correct. It's very broad. Right. It's extremely broad. So she could have been guilty of that. She is guilty of something. She didn't bill some of the forms. All right. Well, now let's go back to my question, because the cases that you don't like, the ones in the First and Eighth Circuit, note the fact that when Congress passed 1344, the bank fraud statute, it intended to adopt the law of mail and wire fraud under 1341. That was what Congress had in mind. That's in the legislative history. So if that's the case, why shouldn't we analyze bank fraud under 1344 the same way we would if we were looking at this as a mail fraud under 1341? You know, that's a good point, except for there's and I thought about that as well, but there's cases like the one in the Tenth Circuit, U.S. v. SAC, where they make a distinction between the first and second section, where the first one, you have to victimize the bank. And that's what the case law says, whereas on the second section, you don't have to victimize the bank. But under general mail and wire fraud, we don't really care who the victim is as long as we can show that the defendant engaged, the defendant concocted a scheme or artifice to defraud and thereafter did a mailing or used an instrument of wire in order to perpetrate the fraud. We don't really care that the victim might be a bank, the victim might be an account owner, the victim might be an insurance company. It doesn't matter as long as we can show an intent to deprive someone else of property permanently, which is clearly what happened here with Ms. Tiger. I would agree with you, except for there was a reason why the Congress made two sections. If it was just one section, I wouldn't have an argument. It's the fact that they have two sections under the same statute. But when Congress passed the statute, weren't they concerned with the raft of savings and loan and other bank failures across the country where banks were essentially being victimized and serving, in essence, as schemes to help people get rich quick at somebody else's expense? You know, I don't know that detail of the legislative history. But I do. If that were the case, I think they would have had just one statute, just a scheme to defraud the bank or something broad like the wire fraud and mail fraud statute. But even this circuit treats those two sections separately. In the McNeil case, where the first section criminalizes defrauding a bank, and then you make a distinction that the second section is broader, where it criminalizes schemes where one obtains money fraudulently from funds that the bank has custody of. They're two separate types of crimes, and this circuit has recognized that. But the bank clearly had custody of the Smith Foundation's money, right? Yes. So would you agree that if they charged her under 1344-2, there would have been a crime  Relatively, yes. Yes.  Thank you. Thank you. I have five seconds for a rebuttal. May it please the Court, West Shoe on behalf of the United States. Your Honor, first of all, with respect to the factual basis in this case, I would refer the Court to the excerpt of record on page 8, which contains the factual basis from the plea agreement and which was gone over to Rule 11 colloquy. It states explicitly that in her employment, defendant was not at any time authorized to sign the name A.C. Green on any foundation check in any manner. Furthermore, later in the factual basis, there's a sentence that says specifically defendant forged either by hand or with a signature stamp the authorized signature of A.C. Green on numerous foundation checks over the course of her employment. I would tell the Court that there is no evidence in the record, and as a matter of fact, it's simply not correct, that that stamp was meant for checks. The stamp was not meant for checks. That's not what she had it for. And so with respect to that ---- So I take it your position is, if I can deduce from this, that it is possible the bank had some exposure for paying the check. I don't want to put words in your mouth, but if the foundation had said you paid this on a Mickey Mouse signature, you know, it's obviously a forged signature or it's a stamp instead of a hand signature, they might have been able to go off to the bank to get the money back. That's exactly right, Your Honor. Well, the first position is that the district court didn't commit plain error enough being clairvoyant about this problem during the Rule 11 colloquy. But the second position is even if this Court were to adopt in this case a risk of loss element. Well, which is the first position or the second really is a question of sequencing. I mean, one possibility would be to say there's no problem because, in fact, the bank was, to whatever definition you apply, the bank was ---- had some exposure. That is, yes, the government's position, Your Honor. In fact, in response, and I showed this to Ms. Booker this morning, in response to the defendant's reply brief, I actually looked through the Uniform Commercial Code, and there's actually a ---- Did you pull the book from the shelf? I did. How unusual for a lawyer of your vintage age. It has been a while. I asked some people, and I found the library, and in the Uniform Commercial Code, there is a commentary that under Section 3-404, and the commentary is A-4, it discusses actually facsimile signature machines, basically a company purchases a machine to sign all of their checks for them, and it discusses the situation where some ---- a target or a defendant obtains control of the machine and issues a number of checks for themselves, and then what happens next. And in that commentary, it actually discusses the fact that the most likely thing to happen is the bank gets sued because they are paying funds to unauthorized recipients. And the editorial comment then goes on to discuss possible solutions to that, contractual solutions to that, whether or not they are legal. But for the government's purposes here, the point is that there is exposure for the issuing bank when there is an unauthorized signature affixed to the check. So the analogy would be if I forge by hand an authorized endorsement signature on a check, I present that check to the bank, and the bank is going to be liable for making an unauthorized disbursement in response to that check because it should have known from looking at the squiggly signature that it didn't match the signature card that was on file at the bank. That's correct. But the problem we have here, as I understand it, is that there was some kind of ---- I thought it was one of those endorsement stamps that commercial businesses sometimes get from the bank that simply says pay to the order of Union Bank of California account number so-and-so, and you just stamp it on the back of the check. I mean, the bank would have no way of knowing that the person who affixed that stamp endorsement was not authorized to do so by just looking at the back of the check. Well, yes. In this case, the signature is on the front of the check. It's actually the issuing signature. Oh, I see. Okay. I thought it was an endorsement stamp. No. I'm sorry. It's not the endorsement. So it's the maker's endorsement, if you will. Correct. Correct. But I see the problem. And the language in Lalji, even though Lalji was ---- That probably means the bank would have a pretty good defense, but maybe not. That's exactly the government's point, is that it's possible that the bank would succeed in that civil suit, but it's been exposed to the civil suit, which even in the circuits that require such exposure would be satisfied. But according to the commentary that you read us, even if the customer usually used the signature machine, the bank would get sued for paying if the use was unauthorized. Yes. That's correct, Your Honor. Although in this case, it was an unauthorized signature in the sense that it was affixed by someone who was not authorized to affix the signature to the check, and the stamp was not a check-signing stamp. That's nowhere in the record, and it's just incorrect, as a matter of fact. That all being said, there was nothing that occurred during the Rule 11 colloquy that should have informed the district court judge, taking the Rule 11 colloquy, that this was a problem at all. The defendant was informed, both in the plea agreement and during the colloquy, that the element was that she intended to defraud the financial institution. And the defendant, in fact, admitted that she had intended to defraud the financial institution, and she specifically admitted the way in which she intended to defraud the financial institution, which was by misleading them to believe that this was an authorized check from Mr. Green. Thank you. Thank you, Your Honor. In my remaining few seconds, I just want to say that there's nothing in the record that says that the or states that the bank suffered any harm or was exposed to any harm. Okay. Thank you. Thank you. The case is signed. You will stand submitted.
judges: Kozinski, Tallman, Sandoval